306 Ga. 470
FINAL COPY

S19A0846. WELCH v. THE STATE.

BETHEL, Justice.

In October 2012, a jury found Dennis Welch guilty of malice

murder and other crimes in connection with the shooting death of

Jamie Wright.[1] Welch appeals, contending that the trial court erred

---

[1] The crimes occurred from September 22 to 26, 2011. On February 6, 2012, a Berrien County grand jury indicted Welch for malice murder (Count 1); felony murder predicated on aggravated assault (Count 2); aggravated assault (Count 3); burglary (Count 4); possession of a firearm during the commission of a felony (Count 5); theft by taking the victim's truck (Count 6); theft by taking the victim's firearm (Count 7); theft by taking the victim's credit cards, checkbook, identification cards, and wallet (Count 8); identity fraud (Count 9); financial transaction card theft (Count 10); and possession of a firearm by a convicted felon (Count 11). Welch's girlfriend, Michelle Ziegenfuss, was indicted jointly with Welch on Counts 6-10. Ziegenfuss's case is not part of this appeal.

Welch was tried alone before a jury in October 2012. Before the jury returned its verdict, Welch pleaded guilty to possession of a firearm by a convicted felon. In support of Welch's plea, the State proffered evidence that Welch was convicted of multiple felonies in Michigan during the late 1990s. Welch made no objection to this proffer.

The jury found Welch guilty on the remaining counts. The trial court sentenced Welch to serve life in prison with the possibility of parole on count 1, twenty years consecutive on Count 4, five years consecutive on Count 5, ten years consecutive on Count 6, ten years consecutive on Count 7, one year on Count 8 to be served concurrently with the sentence on Count 7, ten years consecutive on Count 9, three years on Count 10 to be served concurrently with the sentence on Count 9, and five years consecutive on Count 11. While the

by failing to give a jury instruction on involuntary manslaughter and that the evidence was insufficient to support his conviction for malice murder. For the reasons stated below, we affirm.

1. Viewed in a light most favorable to the jury's verdict, the evidence presented at trial showed that, on the evening of September 22, 2011, Welch entered the home of his landlord, 85-year-old Jamie Wright, through an unlocked window in a guest bedroom with the intent to burglarize her home while she was away.[2] After searching the guest bedroom, Welch moved on to search the master bedroom. There, he found a loaded Smith & Wesson .38 Special pistol in the nightstand drawer, which he placed in the waistband of his pants. Before Welch could vacate the residence, Wright returned home. Upon seeing her headlights in the driveway,

trial court purported to merge the felony murder count with the malice murder count, the felony murder verdict was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). The remaining count merged for sentencing purposes.

On January 31, 2019, Welch moved in the trial court for an out-of-time appeal, which the trial court granted. His case was docketed in this Court to the April 2019 term and submitted for a decision on the briefs.

[2] Shortly before the crimes occurred, Welch and Ziegenfuss moved into a trailer home owned by Wright that was behind Wright's home.

Welch hid in the master bedroom closet. While in the closet, Welch cocked the pistol and pulled it out of his waistband.

According to Welch, after several minutes he emerged from the bedroom, entered the hallway, and saw Wright sitting in a chair in the living room. He then walked away from where Wright was sitting and toward the kitchen, pistol in hand. Welch later testified that he planned to use the pistol as a "threatening tool" if necessary. When Welch stepped into the kitchen, he stepped on a cat food dish, alerting Wright to his presence. From her seat in the living room, Wright turned his way and called out, "You're not supposed to be in here." Welch, with his finger on the pistol's trigger, turned toward Wright and fired the pistol, killing Wright.

Two days later, on September 24, 2011, Wright's body was found sitting upright in an armchair in her living room. She died from a gunshot to the upper-left portion of her chest. At that time, it was also discovered that Wright's truck was missing. Law enforcement processed the scene, uncovering evidence of a burglary, including a raised window, damage to the blinds in the guest

bedroom, and a ransacked master bedroom. While investigators were unable to develop any identifiable latent prints at the crime scene, "linear fabric impressions" were developed that were consistent with those made by a person wearing gloves.

On September 25, law enforcement located Wright's truck at an apartment complex in Gainesville, Florida. The next day, deputies from the Alachua County Sheriff's Department were dispatched to the truck's location, where Welch and his girlfriend, Michelle Ziegenfuss, were arrested without incident. Law enforcement seized the couple's belongings from the apartment in which they were staying, recovering Wright's birth certificate, driver's license, military identification card, social security card, and credit card. Investigators also found receipts dated September 23 for electronics bought from Best Buy and Walmart, as well as a handwritten check register and a deposit ticket bearing Wright's signature. A pair of gloves was also found with Welch's belongings, and a Smith & Wesson .38 Special revolver was found in the center

console of Wright's truck.[3]

When Welch was arrested, he was read the *Miranda* warnings and questioned at the scene of arrest. Welch waived his rights and confessed to a deputy that he was burglarizing Wright's residence when she came home and confronted him. He admitted to shooting Wright, but claimed that the shooting was accidental and that "the gun just went off." In a later interview, Welch told investigators where he disposed of the spent shell casing. Investigators went to the location identified by Welch and recovered the shell casing.

At trial, Ziegenfuss testified on behalf of the State and confirmed that she and Welch used Wright's credit card extensively from the time Welch took the card until the two were arrested. She also testified that Welch used one of Wright's blank checks to make a check payable to Ziegenfuss and that Ziegenfuss deposited that check into her account. According to Ziegenfuss, Welch confessed to her that he shot Wright.

The State's firearms expert testified that the pistol recovered

---

[3] Investigators located a .38 Special cleaning kit at Wright's home.

from the center console of Wright's truck fired the shot that killed Wright.[4] Testing indicated that the weapon was in good working condition, and the firearms expert testified that she would not consider the pistol to have a hair trigger. Furthermore, she explained that the gun had a safety to prevent it from discharging if the trigger was merely bumped or if the operator's finger slipped off of the pistol's hammer while thumbing it back.

Welch argues that the evidence against him in regard to his conviction for malice murder was insufficient.[5] We disagree.

A person commits malice murder when he "unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

---

[4] The fatal bullet was recovered from within the armchair in which Wright was sitting when she was killed.

[5] Welch also challenges the sufficiency of the evidence for the felony murder and aggravated assault counts. However, because the aggravated assault count merged into the malice murder conviction, and the felony murder count was vacated by operation of law, Welch was not sentenced on either of these counts. Accordingly, these claims are moot. See, e.g., *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010). Welch apparently does not challenge the sufficiency of the evidence for his remaining convictions, but our independent review confirms that there was sufficient evidence to support those convictions. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

This meaning of malice murder is consistent with the general rule that crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur. Thus, a malice murder can be shown not only by evidence that the defendant acted with the deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, but also by evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating [his] guilt of the crime of malice murder, no less probative than proof that [he] acted with a specific intent to kill.

(Citation and punctuation omitted.) *Moran v. State*, 302 Ga. 162, 164 (1) (b) (805 SE2d 856) (2017) (evidence that appellant shot victim in the back of the head from close range as victim begged for his life was sufficient to support conviction of malice murder). Evidence at trial authorized the jury to conclude that Welch put his finger on the pistol's trigger, pointed the pistol at Wright, and shot her in order to complete the burglary that Welch admitted he intended to commit. Under these circumstances, the evidence was sufficient to authorize a rational jury to conclude beyond a reasonable doubt that Welch

was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. In a separate enumeration, Welch argues that the trial court erred by refusing his written request for an instruction on involuntary manslaughter based on reckless conduct. Welch requested the instruction prior to trial, objected when the trial court refused it, and renewed his objection when the trial court did not give the instruction. For the reasons detailed below, we conclude that the trial court did not err by refusing to give the instruction.

"[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." (Citation and punctuation omitted.) *Bryson v. Jackson*, 299 Ga. 751, 755 (2) (d) (791 SE2d 43) (2016). And while involuntary manslaughter can be a lesser included offense of felony murder, see *State v. Springer*, 297 Ga. 376, 377 (1) (774 SE2d 106) (2015), there is no evidence in this case that would have supported such a charge.

We considered a similar claim in *Hood v. State*, 303 Ga. 420

(811 SE2d 392) (2018). In that case, the appellant argued, as Welch argues now, that certain felonious acts "somehow combined to constitute evidence of merely reckless conduct." Id. at 427-428 (3). In this case, Welch argues that there was no evidence that he intentionally shot Wright. Instead, in Welch's view, the evidence showed that he entered the house unarmed, took possession of the gun merely for purposes of reselling it later, and discharged only one bullet from the gun. But Welch ignores the fact that all of these acts, under the facts of this case, constitute felonies, including burglary, possession of a firearm during the commission of a felony, aggravated assault, and possession of a firearm by a convicted felon. To merit a charge on involuntary manslaughter, "the unlawful act underlying the unintentional death of the victim must be an act other than a felony." Id. at 428 (3). Thus, "[Welch] has not shown that the trial court erred . . . in failing to charge the jury on his convoluted theory of involuntary manslaughter based on reckless conduct." Id. This claim is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Berrien Superior Court. Before Judge McClain.

*Bennett & Connell, Matthew B. Bennett*, for appellant.

*Richard L. Perryman III, District Attorney, Rebekah M. Ditto, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General*, for appellee.